## PLEASANTS v. CLAGHORN.

### July 6, 1839.

*Case stated.*

1. A parol lease "by the year," unaccompanied by more specific words, is a lease for one year, and is not binding on the parties for more than a year.

2. Of tenancy at sufferance, at will, and for a term, and of the rights and remedies of the landlord and tenant in each case.

THE following case was stated for the opinion of the court as a special verdict.

"March 23, 1835, the said parties agreed as follows: 'Mary T. Pleasants agrees to let to J. W. Claghorn, and J. W. Claghorn agrees to rent to Mary T. Pleasants, the said Mary T. Pleasants' house, on the west side of Tenth Street, fifth door above Cherry Street, for one year, at four hundred and sixty dollars per annum, payable quarterly.'

Defendant continuing to occupy the premises at the said rate of rent, a few days previous to the expiration of the quarter, ending on the 23d December, 1836, plaintiff sent for defendant and informed him that the rent of the house he occupied, would be raised at the end of that year's tenancy, to wit, the 23d of March, 1837. Defendant wished to know how much it would be advanced. Plaintiff was not then prepared to say, but would let him know at a future time. About the middle of said month of March, 1837, defendant called to know what the rent would be; plaintiff answered that if she was disposed to raise the rent in the same proportion that her landlady had done, it would be over 600 dollars, but being disposed to be moderate, she should not ask him more than 575 dollars. He thought that sum out of all bounds, and said he would give 525 dollars. Plaintiff told him that would not do. Defendant said he would only take it by the quarter at that rate. Plaintiff replied that she rented it by the year only, and never would rent it by the quarter. Defendant left plaintiff, saying he thought he would be able to give her possession in the course of one week. The next day he returned,

[Pleasants v. Claghorn.]

having found that Joel Atkinson's house next door to him, which he had intended taking, was engaged to another person; defendant then said if plaintiff would put her house in the same order that Atkinson's was in, he would engage to take it at the same rate that Joel got for his. Wishing to have a clear understanding, plaintiff requested defendant to state exactly what repairs he required, which were all done according to agreement. It afterwards appeared that Joel had rented his house at the rate of 600 dollars per annum. Defendant paid that rate of rent for the year from the 23d of March, 1837, to the 23d of March, 1838. On the 28th of May, 1838, defendant left the premises. And on the 15th June, 1838, defendant called with a witness on plaintiff, and tendered her 150 dollars, amount of a quarter's rent, falling due on the 23d of said month, which plaintiff declined to receive, stating that she did not wish the money until it was due. At the same time defendant tendered the keys of the said house, which she also refused, observing that she did not wish the house until the end of the year.

June 23, 1838, defendant called on plaintiff and paid the rent, 150 dollars, due on that day, and tendered the keys in presence of a witness, which were refused. Defendant then left them upon a chair and returned. Subsequently on the same day, to wit, on the 23d of June, at about 5 P. M., a note was handed to him in his counting-house from plaintiff, in which she informed him she had returned the keys by her son. The key was refused by defendant, but was left by her son upon the counter of defendant's store.

The plaintiff in these interviews contended that defendant was bound to keep the property for the full year, and defendant contended that he was not so bound.

The house continued vacant till 10th September, 1838, when it was re-let under an agreement between the parties that the rights of neither should be affected or prejudiced thereby.

The question to be decided by the court is, whether defendant under the facts aforesaid is legally bound to pay rent for said house from the 23d of June to the 10th of September, 1838. If defendant is legally bound to pay the same, judgment shall be rendered for 130 dollars in favour of the plaintiff, and if defendant is not so bound, then judgment is to be rendered for defendant."

[Pleasants v. Claghorn.]

*Sharswood*, for plaintiff.

*Price*, for defendant.

Authorities cited: 2 *S. & R.* 49, Bedford *v.* McElherren; 5 *S. & R.* 174, Fahnestock *v.* Fasternacht; 4 *Whart. R.* 226, Philips *v.* Monges; 4 *Rawle* 123, Leslie *v.* Randolph; 3 *Whart.* 35, Grant *v.* Gill; 13 *S. & R.* 60–63; 9 *S. & R.* 93; 29 *E. C. L. R.* 474.

The opinion of the court was delivered by

JONES, J.—The question which has been discussed in this case turns upon the fact whether the defendant, on and after the 23d March, 1839, became a tenant at sufferance of the plaintiff, or whether he continued to occupy the house mentioned in the case stated, under a contract or demise for the further term of one year at the least.

No question has been made whether the contract and occupation previously had, was strictly a lease, or demise, or only an agreement for a lease, and I shall not notice that question.

But in order to decide the question raised, it will be convenient to state, briefly, the principles of the common law which have been adverted to in the arguments of counsel.

A tenant at sufferance is described to be one who comes to the possession of lands or tenements by a lawful title, but keeps them afterwards without any title at all. The examples of this kind of tenure usually given, are a lessee for a term of years, or a tenant for the life of another person who holds the possession of the lands or tenements after his term or estate has expired. It is, in effect, nothing more than the continuance of a possession lawfully taken, after the title under which it was taken is ended.

It is said in the books that a tenant at will in the eye of the law is of better assent than a tenant at sufferance. The reason given is, that a tenant at will hath his estate by the contract and free assent and consent of the lessor, and by the modern decisions, at least, he is entitled to a notice to quit, before he can be ousted from the premises which he so occupies. The lessor may reserve a rent upon such a lease, and distrain for it when in arrear, or he may have an action of debt because of the contract, as he might have against a lessee for years, *Litt* § 72. Such a tenant is capable also of taking a release in enlargement of his estate by reason of the privity between him and his landlord.

A tenant at sufferance, on the other hand, occupies the lands,

&c., of his own head, without any demise.　He is incapable of taking a release in enlargement of his estate, because there is no privity of estate between him and the owner of the land.　He may be ousted without notice to quit, although the owner cannot maintain an action of trespass against him, till after an actual entry.　Nor is there any remedy against him for rent, for want of privity of estate, and because there is no contract between him· Nor can any action of assumpsit for use and occupation be maintained against him by the owner of the premises so occupied, for the same reason.　*Litt,* § 460 ; *Dyer* 269, &c. ; 5 *Co. Rep.* 10 a ; *Litt,* § 72 ; 3 *S. & R.* 500 ; *Co. Let.* 57 ; 7 *S. & R.* 304, 5.

It follows from these principles, that if there was no subsisting contract between the parties, after the 23d March, 1838, and no privity of estate between them, the plaintiff's only remedy would be for damages, in an action of trespass, to be brought after the plaintiff's re-entry, in which the jury, in estimating the damages, would be influenced by the duration of the wrongful occupation of the defendant.　It is important then to determine whether the plaintiff and defendant, after the day mentioned, sustained the relation of contracting parties, or that of landlord and tenant under a demise, or whether the defendant occupied the house without right, and subject to be ousted upon entry, without notice. This is a question of fact, and unless it be substantially contained in the case, no judgment can be rendered.

It is contended by the plaintiff that the letting in this case was from year to year, and the argument is founded upon the fact that the plaintiff, in reply to the defendant's proposal, at the commencement of the year which terminated before the time in question, said that she rented it *by the year* only, and never would rent it by the quarter, after which the defendant occupied a whole year, and held over during the time in question, which it is contended was an implied assent to hold it during the whole of another year.　These facts certainly would be very proper for the jury to consider, if called upon to determine the fact of a contract for a term at least of two years.　But we are at present to declare the conclusion of law from the words relied upon, " by the year only," considered as terms of contract.

It is a principle of law that a term must have definite limits in respect of time, and there are many cases in the books which turn upon this principle.　It has been decided, for example, that a

26*

[Pleasants v. Claghorn.]

lien for years generally, without saying *how many*, is a good lease for two years, because one year will not satisfy the expression. But it is not a good lease for more than two years, because there is no rule by which the continuance of the time can be determined, unless the least number that will satisfy the expression be deemed to be the number intended by the parties. *Bro. Abr. tit. Lease* 13; 6 *Co. Rep.* 35, 36.

It has also been decided that a lease for three years, and so from three years to three years, during the life of the lessee, is a good lease for nine years. And there are other cases turning on similar expressions. 3 *Bulst.* 158; *Rolls Rep.* 187; *Dyer* 24; *Rolls Abr.* 850.

But we do not need the authority of cases to decide that the expression in question did not bind the plaintiff or defendant to a longer occupation than one year, in the first instance, so that neither could by dissent terminate the tenancy at the end of the year. Yet if these words, as terms of contract, by their proper force created a longer term than one year, absolutely, it would be impossible to say after what number of years the term would expire, and it certainly could not be determined by either party, without the consent of the other, before the expiring of the term. The question then recurs, whether at the end of the year a new contract was made, and that is a question of fact unresolved by this part of the case.

It is also said that a tenant at sufferance is a tenant at the election of the owner of the land, by which it must be meant that he is a tenant sustaining the obligations resulting from privity of contract or estate, or it would not be an important consideration.

To support this proposition it is urged that the contrary doctrine would allow the defendant to take advantage of his own wrong. If this principle be fairly applicable at all to such a case as this, it is difficult to see how the plaintiff could, from the mere fact of holding over, elect to treat the defendant as a tenant beyond the time of actual occupancy. If she might elect to treat him as her tenant for one whole year, because he held over during a day, she might elect to treat him as such for a longer time, unless there was something else in their transactions which would limit the period, but on that supposition, the liability of the tenant to hold would not depend upon or be determined by the single act of holding over, but upon other matters. It is conceded

[Pleasants v. Claghorn.]

that the act of the defendant in holding over may be coupled with the terms originally proposed by the plaintiff to him, and so go to make up the evidence requisite to convince a jury of the existence of a contract in fact, between the parties, but the question now under consideration rests upon a different ground.

It may be added that the mere fact of holding over would not be sufficient evidence to justify a jury in finding the existence of a new contract, for that would be a finding against law, because it would be repugnant to the elementary notions of the Common Law upon the subject. Of necessity there must be a holding over, or a continuance of the possession after the expiring of the title under which the possession was taken, in order to constitute a tenancy at sufferance, and to allow a jury to find a contract from this fact alone, would be to allow them to subvert the law.

Besides, it seems conclusive upon the subject that the owner of the land cannot, upon this principle of waiver or election, maintain an action of assumpsit, for use and occupation, against a tenant at sufferance. The plaintiff in that action must prove a contract, or he fails, although he may establish the fact by presumption, as well as by direct evidence.

It is contended also that the offer of the defendant to pay 150 dollars rent, accrued during the term in question, is repugnant to the idea of a tenancy at sufferance, and conclusive evidence of a demise. The fact of the offer of that sum as rent, is stated in the case, and we must take the fact to be as it is stated. We cannot say, therefore, that it was intended as a reasonable and equitable remuneration for occupancy during the time.

But rent implies a reservation in a grant or demise, and is therefore evidence of privity of estate between the party paying and receiving. There are many cases in which the receipt of rent has been deemed a controlling fact. (See 5 *B. & A.* 604, *note, for a collection of such cases.*) But while this fact may be deemed conclusive upon the question as it respects the relation of privity of contract or estate between the parties, it is not competent for the court to infer from it a contract for the precise term of a year. It is a part of the case that the defendant contended, during the interview between him and the plaintiff, that he was not bound to keep the property for the full year, while the plaintiff contended that he was so bound.

The liability of the defendant depended upon the fact of an ex-

[Pleasants v. Claghorn.]

isting contract, and it would be unfair to infer from the offer of payment, a contract for the year, when the offer was connected (for so we must take the case) with the denial of his liability to keep the property during that term.

This fact, therefore, is available on the present question only to the extent of showing the relation of privity to exist, but we cannot deduce from it, as a necessary inference, the subsistence of a contract beyond the time admitted by the defendant at the making of the offer. It is available therefore only as evidence before the jury, as a circumstance, in connexion with the others mentioned, to satisfy them that a new contract was made by the parties for the whole of the year in question.

The question before a jury would turn upon the fact of an express contract between the parties, and not upon the question whether *ex equa et bona* the plaintiff ought to recover.

In the action of assumpsit, the law often allows a plaintiff to recover on the idea of a contract, when none in fact was made, because in equity and conscience the plaintiff ought to recover the moneys demanded.

The question in this case is entirely different. The jury must be convinced that in point of truth there was an actual contract or understanding between the parties relative to the occupation of the house during the whole of the year.

It does not appear to me by the case stated that there was such a contract. The utmost I can say is that there are facts stated which would be pertinent evidence upon that question. But it is not for the court to find the fact which the parties could not agree to state.

The court therefore cannot give judgment upon this case. If the parties cannot amend it by agreeing upon all the material facts, they must settle before a jury such as are in dispute.[a]

---

[a] Afterwards, this cause was put upon the issue list, and a trial was had, but the jury not being able to agree upon a verdict, they were discharged, and the parties settled by compromise.